Charles G. **REEDER**, as Special Administrator of the Estate of Denise C. Palmer, Deceased, and Dennis W. Palmer, Appellants–Plaintiffs,

v.

A. Patricia **HARPER**, M.D., Indianapolis Breast Center, Carol C. Eisenhut, M.D., and Diagnostic Cytology Laboratory, Inc., Appellees–Defendants.

No. 49A05–9909–CV–416.

Court of Appeals of Indiana.

Aug. 10, 2000.

**1248**

C. Warren Holland, Michael W. Holland, Holland & Holland, Indianapolis, Indiana, Attorneys for Appellants.

Michael G. Getty, Rori L. Goldman, Hill Fulwider McDowell Funk & Matthews, Indianapolis, Indiana, Attorneys for A. Patricia Harper and Indianapolis Breast Center.

Sally Franklin Zweig, Ronald G. Sentman, Johnson Smith Pence Densborn Wright & Heath, Indianapolis, Indiana, Attorneys for Carol C. Eisenhut and Diagnostic Cytology Laboratory, Inc.

## OPINION

KIRSCH, Judge

Charles G. Reeder, Special Administrator of the Estate of Denise C. Palmer, and Dennis W. Palmer (together "Palmers") appeal the grant of summary judgment in favor of A. Patricia Harper, M.D., and Indianapolis Breast Center (together "Harper"), and Carol C. Eisenhut, M.D., and Diagnostic Cytology Laboratory, Inc. (together "Eisenhut") (collectively "Defendants") on their claim of medical malpractice. They raise the following restated issue for review:

> Whether the trial court erred in granting summary judgment on the Palmers' wrongful death claim and the Estate's survivorship claim for the injuries that Denise Palmer incurred by Harper's failure to perform and Eisenhut's failure to recommend an excisional biopsy.

We affirm.

## FACTS AND PROCEDURAL HISTORY

In July 1991, Denise Palmer saw her obstetrician/gynecologist Dr. Timothy Feeney for an annual examination. At that time, she complained of a palpable lump in her left breast. Dr. Feeney recommended no further treatment. In December 1991, Denise again contacted Dr. Feeney's office, complaining that the lump had become larger and more painful. She was seen by Dr. Feeney's nurse, who noted the lump and contacted Harper. The nurse told Denise that Harper was very busy, and after reviewing Denise's medical records, Harper had decided that Denise could wait until after the first of the year to be seen.

On January 11, 1992, Harper performed a needle aspiration biopsy on the lump. The specimen from the procedure was ex-

amined and interpreted by Eisenhut, who determined that the cells were benign.

In February 1992, Denise was experiencing increased pain which interfered with her ability to use her left arm. She again contacted Dr. Feeney, who referred her to Dr. Thomas Schmidt. Dr. Schmidt performed an excisional biopsy of the lump. The results of this biopsy showed that the tissue was cancerous. In light of this, Dr. Schmidt recommended a second opinion on the specimen produced from the earlier biopsy. Dr. Sudha Kini examined the specimen and concluded that it was suspicious for cancer. Denise eventually underwent a double mastectomy, radiation, multiple courses of chemotherapy, and preparatory treatment for a bone marrow transplant.

In July 1993, the Palmers filed a proposed medical malpractice complaint alleging that Defendants' failure to diagnose and treat Denise's breast cancer caused her personal injury and resulted in Dennis Palmer's loss of his wife's services. In January 1996, the Palmers amended their complaint to reflect that Denise Palmer had died and to add a claim for wrongful death.

In June 1996, the Medical Review Board issued its opinion. The Board found that Harper deviated from the standard of care in failing to recommend a surgical excisional biopsy of the enlargening mass. It also found that Eisenhut deviated from the standard of care in failing to report that the lesion needed to be excised. However, the Board also found that "such deviations were not a factor in altering the course of the patient's disease or in hastening her death." *Record* at 186.

In August 1996, the Palmers filed their complaint for damages on the same bases identified in the proposed complaint. All of the defendants moved for summary judgment. In opposition, the Palmers designated several items of evidence, including the affidavit of William Alpern, M.D., who opined that Defendants' actions altered the course of Denise's disease and

hastened her death. Following a hearing, the trial court denied the motions.

In June 1999, the defendants renewed their motion for summary judgment because Alpern had died. The trial court granted the motion and entered summary judgment in favor of the defendants. The Palmers now appeal.

## DISCUSSION AND DECISION

■ Summary judgment is appropriate when the designated evidence demonstrates that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C); *Warner Trucking, Inc. v. Carolina Cas. Ins. Co.*, 686 N.E.2d 102, 104 (Ind.1997). The purpose of summary judgment is to terminate litigation about which there can be no factual dispute and which can be determined as a matter of law. *Foster v. Evergreen Healthcare, Inc.*, 716 N.E.2d 19, 23–24 (Ind.Ct.App.1999), *trans. denied* (2000); *see* Ind. Trial Rule 56(C) (summary judgment "shall be rendered forthwith if the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.").

■ When reviewing a motion for summary judgment, this court applies the same standard utilized by the trial court, and we resolve any doubt as to a fact, or an inference to be drawn therefrom, in favor of the party opposing summary judgment. *Bamberger & Feibleman v. Indianapolis Power & Light Co.*, 665 N.E.2d 933 (Ind.Ct.App.1996). We will affirm a trial court's grant of summary judgment if it is sustainable on any theory found in the evidence designated to the trial court. *Id.*

■ A party opposing summary judgment is not required to come forward with contrary evidence until the moving party demonstrates the absence of a genuine issue of material fact. *Warner Trucking,* 686 N.E.2d at 104 (citing *Kennedy v. Mur-*

*phy,* 659 N.E.2d 506, 508 (Ind.1995)). However, when the movant's affidavits and other evidence demonstrate the lack of a genuine issue, the burden shifts to the opposing party to demonstrate the existence of a genuine issue for trial. *Carroll v. Jagoe Homes, Inc.,* 677 N.E.2d 612, 614 (Ind.Ct.App.1997), *trans. denied.* The non-moving party may not rest on the pleadings, but must set forth specific facts that show there is a genuine issue of material fact for trial. *Worrell v. WLT Corp.,* 653 N.E.2d 1054, 1056 (Ind.Ct.App.1995), *trans. denied.*

■ We may only consider those portions of the pleadings, depositions, answers to interrogatories, admissions, matters of judicial notice, and any other matters designated to the trial court by the moving party for the purposes of the motion for summary judgment. *Tom v. Voida,* 654 N.E.2d 776, 781 (Ind.Ct.App.1995), *trans. denied* (1996); Ind. Trial Rule 56(C), (H). We may not reverse a summary judgment order on the ground that there is a genuine issue of material fact unless the material facts and the relevant evidence were specifically designated to the trial court. *Tom,* 654 N.E.2d at 781. The appellant bears the burden of proving that the trial court erred in determining that there are no genuine issues of material fact and that the moving party was entitled to judgment as a matter of law. *Id.* at 781.

■ The Palmers first contend that the trial court erred in granting Defendants' motion for summary judgment on their wrongful death claim.[1] The Wrongful Death Statute provides a cause of action when "the death is caused by the wrongful act or omission of another." *Best Homes, Inc. v. Rainwater,* 714 N.E.2d 702, 705 (Ind.Ct.App.1999); IC 34–23–1–1. The purpose of the wrongful death statute is not to compensate for the injury to the decedent, but rather to create a cause of action to provide a means by which the decedent's survivors may be compensated for the loss sustained by reason of such death. *Holmes v. ACandS, Inc.,* 709 N.E.2d 36, 39 (Ind.Ct.App.1999), *trans. denied.* The elements of a claim for wrongful death are a duty owed by the defendant to the decedent, breach of that duty, and an injury proximately caused by the breach. *Tom,* 654 N.E.2d at 787.

■ Here, the element in dispute is causation. A negligent act or omission is the proximate cause of an injury if the injury is a natural and probable consequence which, in light of the circumstances, should reasonably have been foreseen or anticipated. *Best Homes,* 714 N.E.2d at 706. In support of their motion for summary judgment, Defendants designated the opinion of the Medical Review Board that although they breached the standard of care, the breach did not alter the course of Denise's disease or hasten her death. In addition, they designated the affidavit of Dr. Lori Buzetti, a doctor and a member of the Medical Review Board, who opined to the same effect.

In opposition to the motion, the Palmers designated numerous documents. Of these, however, only one addressed the issue of whether Defendants' breach caused Denise's death. This evidence, the affidavit of Dr. Alpern, stated that he believed that Defendants' breach of their duty of care altered the course of Denise's disease and contributed to her death. However, because Dr. Alpern died before Defendants renewed their motions for summary judgment, the trial court determined that it could not consider his affidavit. We agree.

Ind. Trial Rule 56(E) states that summary judgment affidavits must "set forth such facts as would be admissible in evi-

---

**1.** The Palmers asserted claims for both wrongful death and survivorship. A tortfeasor may be held liable under either the Wrongful Death Statute or the Survivorship Statute, but not both. *Best Homes, Inc. v. Rainwater,* 714 N.E.2d 702, 705 (Ind.Ct.App. 1999). However, Indiana trial rules expressly permit parties to plead inconsistent, alternative claims. *Id.* at 707; Ind. Trial Rule 8(E); 15(A).

dence." We interpreted this rule in *Spier by Spier v. City of Plymouth*, 593 N.E.2d 1255 (Ind.Ct.App.1992), *trans. denied* (1993), in which a child sued the city for negligence after a signpost fell and injured him. The city moved for summary judgment, relying on the affidavit of a resident who had witnessed a boy shake and bend the signpost the day before the accident. The boy presented affidavits that suggested that the city knew that signposts rusted and became dangerous. The trial court granted the summary judgment. This court held that the trial court erred in considering the resident's affidavit because the man died before the entry of summary judgment. Relying on Trial Rule 56(E), we held that because the recorded statements of a deceased person are hearsay, they are not admissible in evidence, and therefore, not competent summary judgment evidence. In doing so, we noted, "a party resisting a motion for summary judgment may not use an affidavit which consists of inadmissible hearsay to create a dispute as to an issue of material fact." *Id.* at 1260.

Here, the only evidence the Palmers designated on the issue of causation was the affidavit of Dr. Alpern. However, Dr. Alpern died before Defendants filed their renewed motion for summary judgment. Because Dr. Alpern was dead, the facts to which he testified in his affidavit would not be admissible in evidence at the trial because his recorded statement is hearsay. Thus, neither the trial court nor we can consider his affidavit in determining whether a genuine issue of material fact with regard to whether Defendants' negligence caused Denise's death. Moreover, because this was the only evidence the Palmers submitted on the issue of causation, the designated evidence revealed no genuine issue of material fact. The trial court did not err in granting summary judgment on this claim.

■ The Palmers also contend that the trial court erred in granting summary judgment on the Estate's survivorship claim. The Survivorship Statute applies when a person receives personal injuries caused by the wrongful act or omission of another and subsequently dies from causes other than those personal injuries. IC 34–9–3–4. In an action brought under the Survivorship Statute, the personal representative of the decedent may recover all damages resulting before the date of death from those injuries that the decedent would have been entitled to recover had the decedent lived. *Best Homes*, 714 N.E.2d at 705; IC 34–9–3–4.

On the survivorship claim, the essential issue was whether Defendants' breach caused Denise's pain and suffering during her life from December 1991 to March 1992 when her cancer was diagnosed. Again, Defendants designated the Medical Review Board decision that their breach of their duty did not alter the course of Denise's illness. Again, the Palmers rely only on the Alpern affidavit. Therefore, they have designated no competent evidence to the contrary. The only inference available to the trial court is that Defendants' actions did not cause Denise's injuries. Thus, there is no genuine issue of material fact precluding the entry of summary judgment on the Estate's survivorship action.

■ Nonetheless, the Palmers argue that the trial court erred in entering summary judgment prior to the pretrial order deadline for designating witnesses. Until that time, the Palmers argue that they were free to add experts who would testify that Defendants' negligence altered the course of Denise's disease or hastened her death. However, the Palmers' expert, Dr. Alpern, died nearly two years prior to the entry of summary judgment here. Thus, the Palmers had adequate time to secure an affidavit from another expert to resist summary judgment. Further, had they needed additional time, they could have requested the trial court to continue the

summary judgment hearing, yet they did not do so.

Affirmed.

BAKER, J., and RILEY, J., concur.